# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 26, 2002 Session

## STATE OF TENNESSEE v. LESLIE DARRELL DEBORD

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 5932      Lillie Ann Sells, Judge**

**No. E2001-02808-CCA-R3-CD**
**June 26, 2003**

The appellant, Leslie Darrell Debord, pled guilty in the Cumberland County Criminal Court to two counts theft of property over one thousand dollars ($1000), Class D felonies, and three counts of theft of property over ten thousand dollars ($10,000), Class C felonies. The trial court sentenced the appellant to an effective sentence of eight years incarceration in the Tennessee Department of Correction. The trial court suspended the appellant's sentence, ordering the appellant to serve 104 days in the Cumberland County Jail on consecutive weekends and the remainder in a community corrections program. Pursuant to the plea agreement, the appellant reserved the right to appeal certified questions of law challenging the trial court's denial of his motion to suppress. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

M. Keith Davis, Dunlap, Tennessee, for the appellant, Leslie Darrell Debord.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; William E. Gibson, District Attorney General; and Anthony J. Craighead, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background

At the suppression hearing, Deputy Scott Griffin of the Cumberland County Sheriff's Department testified that on March 26, 2000, at approximately 9:45 p.m., Deputy Gary Bolin requested his assistance at the "Bum Pond area down off of Flat Rock Road into the Bowater property." Deputy Griffin explained that this property, owned by the Bowater Corporation, was "wooded country [with] roads through it for . . . hunters' access." Deputy Bolin was investigating a report regarding a stolen Arctic Cat all-terrain vehicle ("ATV") and a John Deere four-wheel drive backhoe allegedly located on the property. Deputy Bolin advised Deputy Griffin that he had located

the ATV and that he also had discovered an unattended flat-bed pickup truck parked next to the ATV. Deputy Bolin informed Deputy Griffin that the truck's engine "was still hot." Deputy Griffin agreed to assist Deputy Bolin in his investigation.

When Deputy Griffin arrived at the scene, he observed a flat-bed pickup truck parked within twenty-five yards of an ATV. Prior to Deputy Griffin's arrival, Deputy Bolin had checked the ATV's vehicle identification number ("VIN") and had been advised that the ATV had been reported stolen the previous month. Because the truck was parked near the stolen ATV, the officers suspected that it had also been stolen. Deputy Griffin checked the truck's VIN number and was advised that the truck, registered to the appellant, had not been reported stolen. Nevertheless, Deputy Griffin testified that because the engine was still warm, he and Deputy Bolin believed the truck had been recently stolen, but not yet reported.

Deputy Griffin observed that the bed of the truck contained "a fuel tank . . . , an air compressor, some cutting torch hoses" and various other items. Accordingly, the officers began searching the bed of the truck to determine if any of these items were stolen. Deputy Griffin photographed the truck bed and its contents. These photographs were entered into evidence at the suppression hearing.

While searching the open bed of the truck, Deputy Griffin discovered a closed black plastic drill box in a side compartment. Deputy Griffin opened the drill box, wherein he discovered marijuana seeds and "leftover parts of a marijuana cigarette." Upon discovering the marijuana, the officers terminated their search and called Deputy Jerry Jackson to the scene. They then decided to "back off" and wait to see if the driver of the truck returned. Deputy Griffin explained, "Since the engine was still warm, there was a possibility they would come back." Deputy Griffin testified that at that point, the officers still believed that the truck was stolen.

As Deputy Griffin got into his vehicle, he and the other officers observed a truck approaching the scene. Deputy Griffin remained in his vehicle while the other officers walked into the woods to wait. As the truck pulled up beside the flat-bed pickup truck, Deputy Griffin approached the driver, whom he identified as the appellant. Deputy Griffin asked the appellant if he was the owner of the flat-bed pickup truck and the ATV. The appellant responded that he owned the flat-bed pickup truck, but that he had never seen the ATV. Deputy Griffin then advised the appellant that he was under arrest for possession of marijuana.

While conducting a pat-down search, Deputy Jackson discovered a set of keys on the appellant's person, which set of keys included a key to an Arctic Cat ATV. Deputy Jackson gave the keys to Deputy Griffin, who in turn asked Deputy Bolin to determine if the ATV key would start the stolen ATV. Deputy Griffin testified, "[The key] fit. [Deputy Bolin] could turn the engine over, but it wouldn't start." At that point, Deputy Griffin advised the appellant that he was also under arrest for the theft of the ATV.

After the appellant was taken into custody, the flat-bed pickup truck was impounded and the officers searched the Bowater property in the vicinity of the truck and ATV. Deputy Griffin testified that approximately one-fourth of a mile down the road from the appellant's flat-bed pickup truck, the officers discovered the allegedly stolen backhoe, a red cattle trailer, and a trailer with a "Bobcat bucket." The cattle trailer contained the makings of a "meth lab." Behind the cattle trailer, the officers also discovered a "loader, a tree transplanter and a '98 [B]obcat." Approximately one mile from the appellant's truck, the officers discovered a "'66 Mustang on a Cronkite trailer." The officers subsequently learned that these items were stolen.

Based upon the discovery of the ATV key on the appellant's person, the officers obtained a warrant to search the appellant's property. On the appellant's property, the officers found a stolen snow blade. While executing the search warrant, the officers came into contact with the appellant's father, Loyd Debord. He "mentioned another backhoe that was parked on his property . . . [a]nd he asked [the officers to] check that property and check that backhoe to see if it [was also] stolen." When the officers searched the property belonging to the appellant's father, they recovered parts of the stolen Mustang from a small shed.

Several days later, Deputy Griffin learned that the appellant's brother owned property adjoining the Bowater property. Deputy Griffin subsequently spoke to the appellant's brother, who agreed to allow the officers to search his property. The appellant's brother informed the officers, "There are some panels there, some feeders in behind. . . . Come and get them. If they're stolen, I don't want them." The officers located several panels and feeding troughs that had been stolen when the cattle trailer was stolen.

During the inventory search of the appellant's flat-bed pickup truck, Deputy Griffin discovered a toolbox in which he found tools bearing the initials of Dr. John Simpson. Subsequently, on property which was being used by the appellant, Putnam County officers discovered a Kubota generator reported stolen from Dr. Simpson. The officers also recovered a motorcycle reported stolen in the Nashville area.

On cross-examination, Deputy Griffin testified that although initially arrested for possession of marijuana, the appellant became a suspect in the theft of the ATV after the appellant "came to the scene and we realized it was his truck." Deputy Griffin acknowledged that the officers discovered the marijuana in a closed drill box located in a side compartment of the truck, which compartment had "a wooden top to it." Deputy Griffin conceded that, although the officers were searching the bed of the appellant's truck for stolen property, the officer's visual inspection revealed "nothing patently incriminating on that truck." Deputy Griffin added that the officers did not determine that night that any of the items in the bed of the truck were stolen. Moreover, Deputy Griffin related that there was no room for the ATV in the bed of the appellant's truck.

Regarding the property on which the stolen ATV and the appellant's flat-bed pickup truck were discovered, Deputy Griffin testified that the Bowater Corporation owned the property. He described the property as a tree farm on which the Bowater Corporation raised pines for

pulpwood. No one resided on the property. Deputy Griffin related that the truck was "backed into the woods, right off of the gravel road . . . [i]nto the trees. The front end was a couple of feet off the actual traveled road." The ATV was located to the right of the truck, "approximately . . . fifty to seventy-five feet . . . deeper into the woods." Deputy Griffin testified that the officers were able to determine the location where the ATV had been driven into the woods and stated that a "trail" led from the ATV to the road, exiting the woods near the truck. Deputy Griffin related that the gravel road, which would require a four-wheel drive vehicle to traverse, led to the back of the property belonging to the appellant's brother. Deputy Griffin acknowledged that, because the road was "fairly narrow," it would be necessary to park a vehicle off the road and into the woods in order to allow other vehicles to pass.

Based upon the foregoing testimony, the trial court denied the appellant's motion to suppress. The trial court found:

> [T]he officers in this case . . . knew [the property] was Bowater property and that it had no connection to either of these vehicles. [The ATV] was a stolen vehicle from someplace else. And the officers . . . could logically draw the conclusion that this truck was stolen. . . . [T]his is not a parking lot, this is not the side of a public highway [frequented by] the public . . . [where] one would normally pull over and park and go off with a friend. . . . [D]ue to the remoteness of this area, the court finds that these officers had probable cause and that it was an automobile. It was mobile and the court does find that . . . this search was reasonable.

Thereafter, the appellant pled guilty to two counts of theft of property over one thousand dollars ($1000) and three counts of theft of property over ten thousand dollars ($10,000).[1] The trial court sentenced the appellant to an effective sentence of eight years incarceration in the Tennessee Department of Correction. The trial court then suspended the appellant's sentence, ordering the appellant to serve 104 days in the Cumberland County Jail on consecutive weekends and the remainder of the sentence in a community corrections program. Pursuant to the plea agreement, the appellant reserved the right to appeal certified questions of law challenging the trial court's denial of his motion to suppress. See Tenn. R. Crim. P. 37(b)(2)(i). The questions before this court are (1) "Whether the seizure of marijuana from inside a drill box located inside a compartment of the bed of the [appellant's] parked and unoccupied vehicle violated the [appellant's] rights as guaranteed to him by the Fourth Amendment to the U.S. Constitution and Article 1, section 7 of the Tennessee Constitution" and (2) "Whether the remaining evidence obtained by the State against the [appellant] . . . qualifie[d] as 'fruit of the poisonous tree' in violation of the Fourth Amendment to the U.S. Constitution and Article 1, section 7 of the Tennessee Constitution."

---

[1] The appellant pled guilty to counts 2, 4, 5, 7, and 9 of the indictment. Count 2 alleged the theft of a 1999 Arctic Cat ATV; count 4 alleged the theft of a John Deere four-wheel drive backhoe; count 5 alleged the theft of a loader, a 1998 Bobcat, and a tree transplanter; count 7 alleged the theft of a Bobcat trailer and bucket; and count 9 alleged the theft of various tools, wire, and a chainsaw belonging to Dr. John Simpson.

## II. Analysis

The trial court's findings of fact in a suppression hearing will be upheld on appeal unless the evidence preponderates against those findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence.

Id. However, the application of the law to the trial court's findings of fact is a question of law subject to de novo review. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

Both the Fourth Amendment to the United States Constitution and Article 1, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures by law enforcement officers. The purpose of the Fourth Amendment and Article 1, section 7 is to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001) (quoting State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997)); see also State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997). Under both constitutions, "'a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.'" State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting Yeargan, 958 S.W.2d at 629); see also Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032 (1971).

One such exception to the warrant requirement is the "automobile exception" which allows police to search a vehicle without a warrant if the officers have probable cause to believe that the vehicle contains contraband. Carroll v. United States, 267 U.S. 132, 149, 45 S. Ct. 280, 283-84 (1925); State v. Leveye, 796 S.W.2d 948 (Tenn. 1990). If the police have probable cause to believe that an automobile contains contraband, the officers may either seize the vehicle and then obtain a warrant or they may search the vehicle immediately. Chambers v. Maroney, 399 U.S. 42, 52, 90 S. Ct. 1975, 1981 (1970). "Given probable cause to search, either course is reasonable under the Fourth Amendment." Id. Moreover, if there is probable cause to search the vehicle, the officer's authority to search extends to the opening of closed containers within the vehicle. United States v. Ross, 456 U.S. 798, 821, 102 S. Ct. 2157, 2171 (1982). The scope of a warrantless search of an automobile "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Id. at 824, 102 S. Ct. at 2172.

The rationale for the automobile exception is two-fold: (1) the impracticability of obtaining a search warrant in light of the inherent mobility of an automobile; and (2) the reduced

expectation of privacy with respect to one's automobile.[2] California v. Carney, 471 U.S. 386, 390-93, 105 S. Ct. 2066, 2069-70 (1985); South Dakota v. Opperman, 428 U.S. 364, 367, 96 S. Ct. 3092, 3096 (1976). In Leveye, 796 S.W.2d at 952, our supreme court noted that the United States Supreme Court in Carney, 471 U.S. at 392-93, 105 S. Ct. at 2069-70,

> equate[d] a lawfully parked vehicle with a vehicle that is stopped in transit on a public highway and relie[d] upon the inherent mobility of a vehicle to create a conclusive presumption of exigency. . . . [A]t the very least Carney authorizes a warrantless search of a vehicle parked in a public place, after a recent crime, providing probable cause to believe the vehicle contains contraband, without any actual likelihood that the risk of delay to obtain a warrant is high.

In the instant case, the appellant's truck was discovered on property owned by the Bowater Corporation, which property was open to the public. The area was not a residential area, but was a wooded area frequented by hunters and off-road drivers. Moreover, although the ATV was stolen the previous month, the discovery and subsequent search of the appellant's truck occurred shortly after the officers discovered the stolen ATV on the Bowater property. Accordingly, we are left to determine whether Deputy Griffin and Deputy Bolin had probable cause to believe that the appellant's truck contained contraband.

"Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). In the instant case, at approximately 9:45 p.m., the officers were investigating the report of a stolen ATV and backhoe allegedly located on the Bowater property. Within twenty-five yards of the stolen ATV, the officers discovered an unattended flat-bed pickup truck. Because the truck's engine "was still hot," the officers determined that the truck had been parked there recently. The officers also observed that the truck's bed contained a variety of tools and small machinery, including an air compressor, a fuel tank, and "some cutting torch hoses." Based upon the proximity of the truck to the stolen ATV and the fact that the truck had only recently been parked at this location, the officers concluded that the truck and the items located therein were stolen.

We conclude that, based upon these circumstances, the officers had probable cause to believe not only that the truck contained contraband, but that the truck itself was contraband. Therefore, the officers were justified in conducting a warrantless search of the appellant's truck. Moreover, because the officers had probable cause to search the truck, their authority extended to any closed container within the truck in which the officers believed they may find contraband. Ross, 456 U.S. at 821, 102 S. Ct. at 2171. Deputy Griffin testified that he and Deputy Bolin believed that the tools in the bed of the truck were stolen. Accordingly, the search of the drill box in the side compartment of the truck bed was not unreasonable. This issue is without merit.

---

[2] An individual's reduced expectation of privacy in a vehicle stems from the "pervasive regulation of vehicles capable of traveling on the public highways." Carney, 471 U.S. at 392, 105 S. Ct. at 2069 (citing Cady v. Dombrowski, 413 U.S. 433, 440-41, 93 S. Ct. 2523, 2527-28 (1973)).

Having concluded that the search of the appellant's truck and the drill box were justified, we likewise conclude that there is no merit to the appellant's complaints regarding the search of his property and property belonging to his father and brother.  Moreover, the counts to which the appellant pled guilty were based upon stolen items found on the Bowater property and in the bed of the pickup truck, not on property belonging to the appellant, his father, or his brother.

### III.  Conclusion

For the foregoing reasons, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE